GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
GARY M. RESTAINO
Arizona State Bar No. 017450
CAITLIN NOEL
Arizona State Bar No. 033812
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Gary.Restaino@usdoj.gov
       Caitlin.Noel@usdoj.gov
Attorneys for Plaintiff

FILED ☐  LODGED ☒

**Dec 07 2021**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-20-0626-PHX-DWL |
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| Brannen Sage Mehaffey, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, Brannen Sage Mehaffey, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the Information charging the defendant with a violation of Title 18, United States Code (U.S.C.) § 1960(a), (b)(1)(B) and (b)(1)(C), Unlicensed Money Transmitting Business, a Class D felony offense.

2. **MAXIMUM PENALTIES**

a. A violation of 18 U.S.C. § 1960(a), (b)(1)(B) and (b)(1)(C) is punishable by a maximum fine of the greater of $250,000 or twice the gross gain or gross loss, a maximum term of imprisonment of 5 years, or both, and a term of supervised release of up to three years. A maximum term of probation is five years.

b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **COOPERATION REQUIRED**

a. If requested by the United States, the defendant shall meet with representatives of the United States at any reasonable time and place and, in such meetings, shall (i) waive the Fifth Amendment privilege against self-incrimination; (ii) answer all questions asked about any topic whatsoever; and (iii) provide full and complete information about the topics discussed in each interview, if necessary by volunteering information about which no questions are asked.

b. If requested by the United States, the defendant shall deliver to the United States any documents and other items to which the defendant has access.

///

///

c. If requested by the United States, the defendant shall testify at any time and place and, when testifying, shall not invoke the Fifth Amendment privilege against self-incrimination.

d. All information, evidence, and testimony provided by the defendant pursuant to the Cooperation Provision, on any topic whatsoever, shall be truthful, honest, candid, and complete with no knowing and material omissions or false statements. The defendant shall not attempt to either protect or falsely implicate any person or entity through false information or omission.

e. The United States Attorney's Office for the District of Arizona shall not use directly against the defendant in any criminal proceeding (other than a criminal forfeiture proceeding) any evidence provided by the defendant pursuant to the Cooperation Provision. Additionally, pursuant to Section 1B1.8 of the Sentencing Guidelines, the Court shall not use such evidence in determining the defendant's advisory Sentencing Guidelines range. For the avoidance of doubt, however, the United States may (i) make derivative use of evidence provided by the defendant pursuant to the Cooperation Provision, and (ii) use such evidence directly against the defendant in any criminal forfeiture proceeding and any administrative or civil proceeding.

f. The defendant shall work undercover only under the direct supervision of law enforcement officers and with the prior approval of the Court.

g. If the defendant discloses or reveals to any third party the fact that the defendant is cooperating, or the nature of any information that has been obtained by the United States, the defendant shall notify the United States as soon as possible of any such disclosures.

h. The defendant shall notify the United States as soon as possible of any interactions or contacts with any subject or target of any ongoing criminal investigation, any criminal defendant, or their respective counsel or associates.

i. The defendant shall not violate any local, state, federal or foreign laws. The defendant shall comply with all terms and conditions of pre-trial release.

j. If the United States wishes for the defendant's cooperation to continue, the defendant shall not oppose any motions to continue the defendant's sentencing.

k. The defendant shall complete and sign a financial affidavit and a questionnaire of virtual currency holdings, on forms designated by the United States.

l. The defendant shall cooperate with the Internal Revenue Service with respect to any tax liabilities. The defendant shall also file timely, accurate and lawful tax returns and provide proof to the government upon request.

4. **AGREEMENTS REGARDING SENTENCING**

a. Recommendation. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), at sentencing and any other appropriate time, the United States shall bring the nature and extent of the defendant's cooperation to the attention of the Court. Prior to the defendant's sentencing, the United States shall in good faith consider moving the Court to depart downward from the Sentencing Guidelines, and if applicable impose a sentence below the level established by law as the minimum sentence, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), respectively.

b. Non-Binding Recommendations. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

c. Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and U.S.S.G. § 2S1.1(a)(2), the United States and the defendant stipulate that the defendant transmitted in excess of $1,500,000 through his money transmitting business.

d. Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, and by voluntary agreement, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $4,000,000, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A.

Pursuant to 18 U.S.C. § 3663A(c)(2), the defendant specifically agrees that offenses against identifiable victims (who suffered pecuniary loss) gave rise to the plea agreement. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

      e.    <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

      f.    <u>Acceptance of Responsibility</u>. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

///

5. **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

   a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the Indictment.

   b. This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the peer-to-peer exchange of virtual currency for fiat currency, including any charges arising out of the monies deposited by individuals and entities into bank accounts controlled by defendant.

   c. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

6. **BREACH OF THE AGREEMENT**

   a. If the defendant fails to comply with any of the defendant's obligations or promises set forth in the Plea Agreement or the Cooperation Provision, the United States may:

   (1) in its sole and absolute discretion, declare any provision of the Plea Agreement null and void, without giving the defendant any right or option to withdraw from the Plea Agreement or the plea of guilty;

   (2) recommend any sentence, up to and including the statutory maximum sentence;

   (3) prosecute the defendant, or reinstitute prosecution of the defendant, for any and all crimes committed by the defendant, notwithstanding the Statute of Limitations, the Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

   (4) use in any manner, and in any proceeding, any evidence provided by the defendant before or after execution of the Plea Agreement; and

   (5) advise the Bureau of Prisons that the defendant is no longer a cooperating witness, and recommend redesignation of the defendant to a higher custodial level.

///

b. If there is a dispute regarding the obligations of the parties under this agreement, the United States District Court shall determine whether the United States or the defendant has failed to comply with this agreement including whether the defendant has been truthful.

7. **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

8. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including

under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

9. **DISCLOSURE OF INFORMATION**

   a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

   b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time, except as otherwise expressly provided in Section 3.e.

   c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

   (1) criminal convictions, history of drug abuse, and mental illness; and

   (2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

10. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

   a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and

shall not be a limitation on the methods available to the United States to enforce the judgment.

  b. The defendant agrees to forfeit, and hereby forfeits, any interest he may have in the following property:

   (1) $88,290.00 in United States Currency;

   (2) $425.00 in United States Currency;

   (3) $2,900.00 in United States Currency;

   (4) $250.00 in United States Currency;

   (5) $1,000.00 United States Postal Service Money Order Serial # 26380385785; and

   (6) $1,000.00 United States Postal Service Money Order Serial # 26753708046.

  c. The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 18 U.S.C. §§ 981, 982, 2253, and 2328, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

  d. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

  e. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means)

to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

  f. The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant further agrees that he/she will not contest civil, administrative or judicial forfeiture of the listed property. The defendant agrees to waive his/her right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

  g. The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

  h. The defendant hereby waives, and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above. Without limitation, the defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

///

11. **ELEMENTS**

**Unlicensed Money Transmitting Business,**

**in violation of 18 U.S.C. § 1960(a), (b)(1)(B) and (b)(1)(C)**

Between January 2018 and October 2020, in the District of Arizona and elsewhere:

1. The defendant knowingly conducted, controlled, managed, supervised, directed or owned all or part of an unlicensed money transmitting business;

2. The business affected interstate or foreign commerce in any way or degree;

3. The defendant knowingly failed to register his business with the Secretary of the Treasury or the Financial Crimes Enforcement Network, or to otherwise comply with the money transmitting business regulations under Title 31, United States Code, Section 5330; and

4. The defendant knew that his transactions involved funds derived from a criminal offense or intended to be used to promote and support unlawful activity.

12. **FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

b. Between January 2018 and October 2020, I regularly exchanged bitcoin for U.S. currency. I operated from Austin, Texas but sent bitcoin, via an application on my cell phone, to people across the country. Typically I received U.S. dollars from individual members of the public via cash, check or wire into bank accounts I controlled, and I sent the bitcoin to different individuals. I received money from D.P. in Arizona in this way in December 2018 through February 2019, and I also received money from F.F. in Arizona in the same way in January 2020. I earned a commission on each exchange, at approximately 8% of the value of the currency exchanged.

I advertised my business on the internet. On LocalBitcoins.com I instructed prospective bitcoin buyers as follows: "What you do with bitcoin is your business and not mine. Please do not speak of how you use it." I knew that I was obligated to register with

the Financial Crimes Enforcement Network ("FinCEN") and that I was obligated to file currency transaction reports with FinCEN for exchanges in excess of $10,000; I did neither. I also learned from some of the people who wired or otherwise exchanged currency that they were involved in (or victims of) fraudulent activity, including romance fraud. More than three million dollars were wired into accounts controlled by me in this time period.

In January 2020 I began to exchange bitcoin for cash with a man I knew only by his first name. We met in person on a few occasions, and also communicated via text. I now understand that the man was an undercover agent. In March 2020 he mentioned for the first time that he was involved in the sale of drugs like ecstasy; I still exchanged bitcoin for him, and I accepted $8,000 in cash in Austin, with another $13,000 structured into Arizona banks at my direction. (I did not file a currency transaction report.) In April 2020 the man mentioned for the first time that his main source of money came from cocaine sales. I immediately directed him to use an encrypted application (Telegram) for future conversations, and I still exchanged bitcoin for him and his associates, with the cash structured into Arizona bank accounts at my direction.

In April, the man referred an associate to work with me directly. I knew her by her first name, and we communicated via interstate communications through WhatsApp (audio and video, and text). I now understand that she was also an undercover agent. I asked her not to talk about "the other side of things" but when she referenced her cocaine money – and how she wanted the bitcoin to be able to pay her suppliers – I continued doing business with her. In May 2020 I exchanged bitcoin with her while I was in Austin and she was in Arizona. In particular, on May 19, 2020, I directed her to send $5,000 from Arizona to Austin via Federal Express (with the money hidden in the pages of a magazine), and I directed her to structure another $12,900 into Arizona banks. (I did not file a currency transaction report.)

c. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant

to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional

agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

11/9/2021
Date

Brannen Sage Mehaffey
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide

- 14 -

effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

11/23/2021
_____
Date

_____
Arnold Spencer
Attorney for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

11/24/21
_____
Date

_____
GARY M. RESTAINO
CAITLIN NOEL
Assistant U.S. Attorneys

## ACCEPTANCE BY THE COURT

_____
Date

_____
HONORABLE DOMINIC W. LANZA
United States District Judge

- 15 -